UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                   :

ANTHONY L&S, LLC,                            :

                                :        13 Civ. 5495 (PAE)

                     Plaintiff,       :

                                :        <u>OPINION & ORDER</u>

                -v-                 :

                                :

STEPHEN DOHERTY,                     :

                                :

                    Defendant.    :

                                :

------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Anthony L&S, LLC ("AL&S"), brings this diversity action against its former employee, Stephen Doherty ("Doherty"), for allegedly misusing confidential information that he obtained over the course of his employment.  Doherty brought a separate diversity action against AL&S and other defendants, which is pending in the United States District Court for the Eastern District of Pennsylvania, in which he principally alleges a breach of contract based on the claim that various funds due him were misappropriated (the "Pennsylvania Action").  Doherty moves for a stay of this case, pending resolution of a motion to dismiss pending in the Pennsylvania Action, or for the dismissal of this case, based on the claim that AL&S's claims here consist solely of compulsory counterclaims in the Pennsylvania action, over which this Court lacks jurisdiction. For the reasons that follow, Doherty's motion is denied.

I.      **Background**[1]

    A.      **The Parties**

AL&S is a Manhattan-based company that designs, sources, develops, markets, and sells shoes.  Compl. ¶¶ 1, 3.  Its members are Loconte Family, LLC, which owns a 95% membership interest, and Samsung C&T America, Inc. ("Samsung"), a New York corporation which owns a 5% membership interest.  *Id.* ¶ 2; Penn. Compl. ¶ 5.[2]  AL&S owns and licenses brands for footwear including U.S. Polo Association, Cadillac, Bob Marley, Adio, Sole, Phat Farm, Baby Phat, FUBU, Smith's Mountain Gear, and Levi's.  Penn. Compl. ¶ 16.

Anthony Loconte ("Loconte") is the President of AL&S.  Loconte Decl. ¶ 24.  He is a citizen of New Jersey.  Loconte Decl. ¶ 1.

Doherty was a sales representative for AL&S between August 2002 and October 1, 2012.  Compl. ¶ 4.  He managed AL&S's accounts with at least five different companies, *id.* ¶ 7, and received substantial compensation and bonuses for his work, *id.* ¶ 5.  AL&S derived a significant amount of its income from these accounts.  *Id.* ¶ 18.  In the course of his work, Doherty was

---

[1] The Court's account of the underlying facts is drawn from the Complaint in this case, Dkt. 1, and the Complaint in the Pennsylvania Action, *Rostco, LLC, et al. v. Samsung C&T America, Inc. et al.*, No. 13-3035 (E.D. Pa. filed May 31, 2013), Dkt. 1, ("Penn. Compl."), which both parties submitted to the Court in connection with this motion, *see* Exhibit A to the Motion of Defendant Stephen Doherty to Stay or Dismiss, Dkt. 7 (filed by defendant); Exhibit A to the Declaration of Anthony Loconte ("Loconte Decl."), Dkt. 11, (filed by plaintiff).  For the purpose of deciding this motion to stay or dismiss for lack of subject matter jurisdiction, the Court accepts as true the facts alleged in the Complaint in this case and, where relevant, in the Pennsylvania Action.  *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004).  Separately, the Court notes that each section of the Complaint numbers its paragraphs anew.  Thus, the Parties section has paragraphs numbered 1–2, the Jurisdiction and Venue section has paragraphs numbered 1–3, the Factual Background section has paragraphs numbered 1–29, etc.  When referring to paragraphs of the Complaint other than the main, Factual Background section, the Court notes in which section the paragraphs are contained.

[2] Loconte Family, LLC appears to be a citizen of New York and New Jersey.  Compl. ¶ 1 (Parties section).

Case 1:13-cv-05495-PAE    Document 14    Filed 01/08/14    Page 3 of 12


exposed to confidential information about these accounts. *Id.* ¶ 20. Doherty is a citizen of Pennsylvania. *Id.* ¶ 2 (Parties section).

Rostco, LLC ("Rostco") is a footwear corporation originally owned by Doherty and his wife, Rose Doherty, Penn. Compl. ¶ 23, in which Loconte later acquired an 50% ownership interest, *id.* Ex. C. Rostco is a citizen of Pennsylvania, *id.* ¶ 7, and, it would appear, New Jersey, by virtue of Loconte's apparent membership in Rostco and citizenship in New Jersey, *id.* Ex. C, Loconte Decl. ¶ 1.

### B.    The Cadillac Licensing Fee Dispute

In September 2006, while he was employed at AL&S, Doherty began negotiating a license agreement that would give AL&S the right to manufacture, sell, and distribute footwear and other clothing containing the Cadillac name and/or logo. Penn. Compl. ¶ 17. In February 2007, Loconte, acting on behalf of himself and AL&S, orally agreed to pay Doherty 3% of any revenues resulting from any such license agreements. *Id.* ¶ 18. Doherty then secured for AL&S two licensing agreements relating to the Cadillac trademarks, one for footwear and the other for apparel. *Id.* ¶ 19. Since then, AL&S's revenue for Cadillac-trademarked footwear has exceeded $25 million. *Id.* ¶ 20.

In December 2010, Loconte told Doherty that he would not pay him the 3% fee, but would instead pay him a flat fee of $150,000 in three annual installments. *Id.* ¶ 21. Doherty reluctantly agreed, fearing that if he pressed the issue, he might lose his job. *Id.* ¶ 22. On December 2, 2010, Rostco, which was then owned by Doherty and his wife, sent AL&S an invoice labeled Invoice 001 in the amount of $150,000, reciting that the invoice was for a "Finders fee for Cadillac footwear." *Id.* ¶ 23; *id.* Ex. A. On December 29, 2010, AL&S paid Doherty $50,000 by issuing a check in that amount to Rostco. *Id.* ¶ 24; *id.* Ex. B. The stub of

3

that check states that it is in reference to Invoice 001, with a beginning balance due of $150,000. *Id.* Ex. B.  Doherty alleges that it was then the parties' understanding that AL&S would pay him the remaining $100,000 in two equal installments on December 1, 2011 and December 1, 2012. *Id.* ¶ 25.  In December 2011, however, when Doherty approached Loconte about that month's expected payment, Loconte refused to pay and stated that he and AL&S would not make any further payments to Doherty.  *Id.* ¶ 26.

C.      **The General Motors Licensing Agreement**

In December 2010, Doherty obtained for Rostco the exclusive right to use certain General Motors and related intellectual property on footwear.  *Id.* ¶ 28.  On January 25, 2012, after Loconte learned of the GM licensing agreement, he entered into an agreement with Rostco and Doherty under which Loconte acquired a 50% ownership stake in Rostco "in exchange for a capital contribution of one hundred dollars ($100) and other good and valuable consideration." *Id.* Ex. C.  According to Doherty's allegations in the Pennsylvania Action, under this agreement Loconte or AL&S would provide Rostco with capital to develop and manufacture footwear under the GM licensing agreement.  *Id.* ¶ 29.  Rostco would then sell the GM footwear, with Doherty and Loconte splitting the profits.  *Id.*

In April 2012, The Shoe Show, Inc. ("Shoe Show"), ordered 14,682 pairs of footwear bearing the GM trademark from Rostco.  *Id.* ¶ 30.  At the time, Rostco was not yet an approved Shoe Show vendor, and so the parties agreed that AL&S would issue the initial paperwork for the Shoe Show order.  *Id.* ¶ 34.  However, Doherty claims, on December 14, 2012 AL&S sent Shoe Show a purchase order that represented, allegedly falsely, that the purchased footwear bore Cadillac rather than GM trademarks.  *Id.* ¶ 34; *id.* Ex. E.  Then, in the first quarter of 2013, Samsung, allegedly in conspiracy with Loconte, sent Shoe Show invoices bearing the name

4

AL&S, *id.* ¶ 33, *id.* Ex. D, causing Shoe Show to pay AL&S rather than Rostco, *id.* ¶¶ 36–37.
Despite repeated demands, AL&S refused to pay Rostco the money it received from Shoe Show
or even the portion of those funds that Rostco needed to pay its royalty fee under its GM
licensing agreement.  *Id.* ¶¶ 38–45.  This placed Rostco at risk of defaulting on the GM licensing
agreement.  *Id.* ¶ 46.

> **D.**     **Doherty's Alleged Use of Proprietary Information**

Meanwhile, in the months leading up to October 2012, Doherty, according to AL&S.
allegedly began to secretly take from AL&S proprietary information regarding the accounts he
managed and the designs of shoes and other AL&S products.  Compl. ¶ 21.  AL&S alleges that
this violated the Confidentiality and Nondisclosure Agreement that Doherty had signed on
March 24, 2004.  *Id.* ¶¶ 8–15.

On or about October 1, 2012, Doherty resigned from AL&S.  *Id.* ¶¶ 4, 24.  AL&S alleges
that Doherty immediately began working for a competitor, *id.* ¶ 24, in which capacity he used
AL&S's proprietary information to contact its customers and sell them shoes that were identical
or nearly identical to those he had sold those customers while employed at AL&S, *id.* ¶¶ 25–26.
AL&S alleges that this practice caused it to lose sales of approximately $10 million in one year
alone.  *Id.* ¶ 28.

> **E.**     **The Pennsylvania Action**

On May 31, 2013, Doherty and Rostco brought suit against Loconte, Samsung, and
AL&S in the United States District Court for the Eastern District of Pennsylvania.  Pennsylvania
Action, Dkt. 1.  Doherty and Rostco alleged there that (1) Loconte and AL&S breached their
contract with Doherty by failing to pay him the remaining $100,000 of his Cadillac license
finder's fee; (2) Loconte breached his contract with Rostco and Doherty by misappropriating the

money from the Shoe Show account; (3) as a result of Loconte's breaches of contract, his participation in and benefits from Rostco should be terminated by issuance of a declaratory judgment; (4) AL&S and Samsung tortiously interfered with Doherty and Rostco's contractual relations with Shoe Show and with the GM license agreement; and (5) defendants violated the Lanham Act, 15 U.S.C. § 1125(a), by using the Shoe Show purchase orders to falsely suggest that they, defendants, were the owners of the rights to the GM trademarks.

On July 11, 2013, defendants moved to dismiss the Pennsylvania Action for lack of personal jurisdiction and improper venue, or in the alternative to transfer the case to this District, based on their representation that the events giving rise to the claims occurred in Manhattan. Pennsylvania Action, Dkt. 6.  Defendants also argued that, as to certain causes of action, Doherty's and Rostco's complaint failed to state a claim.  On July 25, 2013, Rostco and Doherty responded to the motion to dismiss.  *Id.* Dkt. 7.  On August 1, 2013, defendants replied.  *Id.* Dkt. 10.  On October 29, 2013, the court heard argument.  *Id.* Dkt. 14.  On December 18, 2013, the parties stipulated to dismissal of the Lanham Act claim.  *Id.* Dkt. 15.  The motion to dismiss otherwise remains pending.[3]

---

[3] The Court notes that, on the record before it, it appears that there may not be complete diversity in the Pennsylvania Action.  As a limited liability corporation, Rostco is, for diversity purposes, a citizen of all states in which its members have citizenship.  *Handelsman v. Bedford Vill. Associates Ltd. P'ship*, 213 F.3d 48, 52 (2d Cir. 2000); *see also Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).  If, as it appears, Anthony Loconte is a member of Rostco, *see* Penn. Compl. Ex. C, then Rostco, a plaintiff in the Pennsylvania Action, would have the same citizenship as Loconte, a defendant in that action.  Whether there is complete diversity in that action is, however, not for this Court to determine on the record before it, and the record before the Court in the Pennsylvania Action relevant to that issue may differ from the record here.

### F.   The S.D.N.Y. Action

On August 6, 2013, AL&S brought this lawsuit against Doherty.  Dkt. 1.  AL&S brings

seven causes of action, all stemming from Doherty's alleged misuse of confidential information.[4]

On September 9, 2013, Doherty filed the instant motion to stay this action pending

resolution of the motion to dismiss the Pennsylvania Action, or, in the alternative, to dismiss this

case for lack of subject matter jurisdiction.  Dkt. 7.  Doherty also filed a memorandum of law.

Dkt. 8 ("Def. Br.").  Doherty argues that staying this case would prevent potentially inconsistent

rulings from being rendered by this court and the court hearing the Pennsylvania Action, and

conserve resources for the parties and the courts.  In the alternative, Doherty argues that AL&S's

claims here were required to be raised, if at all, only as compulsory counterclaims in the

Pennsylvania Action, depriving this Court of subject matter jurisdiction while the Pennsylvania

Action remains pending.  On September 23, 2013, AL&S filed its opposition.  Dkt. 12 ("Pl.

Br.").  On September 30, 2013, Doherty replied.  Dkt. 13 ("Def. Reply Br.").

## II.   Motion to Stay

"The District Court has broad discretion to stay proceedings as an incident to its power to

control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *accord Louis Vuitton*

*Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) ("The power to stay proceedings is

incidental to the power inherent in every court to control the disposition of the causes on its

docket with economy of time and effort for itself, for counsel, and for litigants.") (quoting *Landis*

*v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  "How this can best be done calls for the exercise of

judgment, which must weigh competing interests and maintain an even balance." *Louis Vuitton*,

---

[4] The causes of action are: (1) breach of contract, (2) conversion, (3) unjust enrichment, (4)
replevin, (5) tortious interference with a prospective business advantage and tortious interference
with a contract, (6) breach of duty of loyalty/good faith and fair dealing, and (7) unfair
competition.

676 F.3d at 97 (quoting *Landis*, 299 U.S. at 254–55); *see also Ofosu v. McElroy*, 98 F.3d 694, 699 (2d Cir. 1996) ("A request for a stay is an appeal to equity.").  The party seeking the stay "bears the burden of establishing its need." *Clinton*, 520 U.S. at 708.

Doherty has not met his burden of establishing the need for a stay pending resolution of the motion to dismiss in the Pennsylvania Action.  On the contrary, he has identified little practical benefit that would be obtained by the granting of a stay.  It is true that the parties here, AL&S and Doherty, are a subset of the parties in the Pennsylvania Action, and that both suits arise, at least in part, out of events connected to Doherty's employment with AL&S.  The overlap, however, stops there.  This case involves allegations that Doherty stole confidential information from AL&S.  By contrast, the Pennsylvania Action principally involves allegations that Loconte and AL&S failed to pay Doherty the $100,000 balance of the Cadillac finder's fee and misappropriated funds from the sale of the GM trademarked footwear.  These alleged misdeeds may all stem from the same underlying breakdown in the business relationship between Doherty and both Loconte and AL&S, but there is no material overlap either between the elements of the parties' respective causes of actions or the factual issues that a trier of fact would be called upon to resolve.

To be sure, there may be persuasive arguments, sounding in efficiency, for coordinating pretrial discovery between the two cases.  For example, there are likely to be common witnesses whose depositions will be noticed in the two cases.  It is also likely that entities and persons (*e.g.*, AL&S, Doherty, and Rostco) will be called upon, in both lawsuits, to retrieve and produce documents.  Coordinating such discovery will likely save the parties costs and time, and may also result in the saving of judicial resources.  But such coordination does not require a stay of this case pending the resolution of the pending motions in the Pennsylvania Action.  The two

cases have been filed, and are likely to proceed, on a sufficiently synchronous timetable that such coordination can readily be achieved.  That is so whether or not the district court overseeing the Pennsylvania Action determines that the standards governing the motion to transfer that litigation to this district are met.  Further, if such efficiencies exist, the parties common to the two lawsuits have a significant incentive to coordinate discovery efforts to attain those efficiencies, and to alert this Court and the district court in Pennsylvania of the value they perceive in such coordination.

Finally, the Court notes that, following this decision, the next step in this litigation will be for Doherty to file an answer, and for the parties to file a joint case management plan consistent with this Court's Individual Rules, *see* http://www.nysd.uscourts.gov/judge/Engelmayer.  In that plan, and at the conference that will ensue with the Court, the parties are invited to raise practical suggestions as to fruitful coordination across the two districts.  The Court, therefore, denies Doherty's motion for a stay pending the outcome of the motion to dismiss pending in the Pennsylvania Action.

## III.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Doherty next argues that this Court lacks subject matter jurisdiction over this action because AL&S's claims here were compulsory counterclaims in the Pennsylvania Action, and may not be raised in this separate case.  Federal Rule of Civil Procedure 13(a) defines a compulsory counterclaim as follows:  "A pleading must state as a counterclaim any claim that— at the time of its service—the pleader has against an opposing party if the claim:  (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a).  The Second Circuit has instructed:

> Whether a counterclaim is compulsory or permissive turns on whether the counterclaim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, and this Circuit has long considered this standard met when there is a logical relationship between the counterclaim and the main claim. Although the logical relationship test does not require an absolute identity of factual backgrounds, the essential facts of the claims must be so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.

*Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004).

Doherty's motion to dismiss fails for much the same reason as his motion to stay: There is minimal legal, or consequential factual, overlap between this case and the Pennsylvania Action. Both cases appear to arise out of the deterioration of the parties' employment relationship. However, that background does not supply a nearly sufficient basis to deem AL&S's claims here of misappropriation of confidential information to logically arise out of the same transaction as Doherty's and Rostco's claims that they were wrongly denied the Cadillac finder's fee and payments arising out of the GM footwear licensing agreements.

In arguing that the cases arise out of the same transaction, Doherty asserts only that the claims in both cases "relate to events which allegedly occurred during and in the course of Doherty's employment with AL&S." Def. Br. 8. But the employment relationship is not the "subject matter" of the Cadillac finder's fee and GM payment claims in the Pennsylvania Action; it is mere background. *See Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 467 (S.D.N.Y. 2008) ("The only possible connection between Plaintiffs' overtime claims and the counterclaims is that they arise out of the same employer-employee relationship. This slender reed will not support a finding that the counterclaims are compulsory."); *Williams v. Long,* 558 F. Supp. 2d 601, 606–07 (D. Md. 2008) (concluding that the defendant's counterclaims were permissive where the only connection was the plaintiff's status as an employee). It might be different if Doherty's employment status was the central legal issue underlying each set of

claims.  *Cf. Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 Civ. 3043 (PAE), 2013 WL 4822199, at \*4 (S.D.N.Y. Sept. 10, 2013), *reconsideration denied* (Nov. 18, 2013) ("The central issue in this case is whether the dancers at Rick's were employees within the meaning of the FLSA and the NYLL.").  That, however, is not the case here.  Resolution of Doherty's claims regarding nonpayment of the Cadillac and GM fees would do little, if anything, to resolve AL&S's claim that Doherty misused confidential information, and vice versa.  As a result, "considerations of judicial economy and fairness" do not "dictate that all the issues be resolved in one lawsuit," *Jones*, 358 F.3d at 209, and AL&S therefore was not obliged to bring its claims regarding Doherty's alleged misuse of confidential information in the Pennsylvania Action.

## CONCLUSION

Doherty's motion to stay or dismiss this case is denied.  The Clerk of Court is respectfully directed to terminate the motion pending at docket number 7.

The Court directs Doherty to file an answer to the Complaint by January 22, 2014.  The Court will hold an initial pretrial conference on February 10, 2014, at 10 a.m.  Prior to the conference, the Court directs counsel to confer with each other regarding settlement and each of the other subjects to be considered at a Federal Rule of Civil Procedure 16 conference.  The Court further directs counsel to submit, by February 5, 2014, a Civil Case Management Plan and Scheduling Order in accordance with the Court's Individual Rules, and a joint letter, not to exceed three pages in length, addressing the following topics in separate paragraphs: (1) a brief description of the case, including the factual and legal bases for the claim(s) and defense(s); (2) any contemplated motions; and (3) the prospect for settlement.

11

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: January 8, 2014
        New York, New York